## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; et al. | : : : | |
| Plaintiffs, | : | CIVIL ACTION FILE NO. |
| vs. | : : | 1:21-cv-01259-JPB |
| BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State; et al. | : : : : | : |
| Defendants. | : : | |
| _____ | : | |

## BRIEF IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### I.     INTRODUCTION

Plaintiffs in this action, upset with the Georgia Legislature for enacting changes to Georgia election law in Senate Bill 202 ("SB 202") and with Governor Brian Kemp for signing those changes into law, have arbitrarily selected and named as defendants the election and registration boards for 3 of the 159 counties in Georgia ("County Defendants").  However, the county election boards have no authority regarding the enactment of voting legislation in the State of Georgia, nor do they have any discretion over whether to follow the laws passed by the Legislature.

In Plaintiffs' original Complaint they properly limited their lawsuit to the Secretary of State and the State Election Board, ("State Defendants"), proper State parties responsible for the enforcement of the provisions of SB 202. [Doc. 1]. However, in their First Amended Complaint Plaintiffs have named a seemingly random set of county defendants, likely as a result of a misguided application of the recent ruling in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020).

*Jacobson*, dealing with the standing of voters to challenge Florida's ballot order provision, reiterated the test from *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992), that "[t]he litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision" and held that the plaintiff in that case could not show standing because the sole defendant, the Florida Secretary of State, had no authority to implement the relief that the plaintiffs requested (changing the ballot order).

Given the complete dearth of factual allegations involving the County Defendants in the Amended Complaint, Plaintiffs appear to have included them solely for purposes of redressability, asking the Court to enjoin the three counties from enforcing the provisions of SB 202.   However, nowhere in the Amended

Complaint have Plaintiffs demonstrated an injury-in-fact, much less one that is fairly traceable to the actions of the County Defendants. They simply do not have standing to assert their claims against the counties and cannot achieve it by skipping straight to the third prong of the *Lujan* test.

Further, even if the Court were inclined to give the Plaintiffs latitude regarding the injury-in-fact and traceability factors, Plaintiffs cannot rationally explain how seeking relief against less than two percent of the total counties in the State of Georgia would redress their purported injuries.

Even construing the lengthy recitation of facts in the light most favorable to Plaintiffs, no amount of leeway can overcome the jurisdictional obstacle of lack of prudential standing. Accordingly, this Court does not have jurisdiction over the claims asserted against the County Defendants, and the County Defendants therefore request that the Court dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.  Standards for Motion to Dismiss

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty*., 501 F.3d

3

1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.*

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321—22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## B.   Plaintiffs lack standing to bring claims against the County Defendants

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019); U.S. Const. art. III, § 2.   "To have a case or controversy, a litigant must establish that he has standing," which requires proof of

three elements. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, (2000). "The plaintiff bears the burden of establishing each element." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019).

"It is not enough that [plaintiff] sets forth facts from which [the court] could imagine an injury sufficient to satisfy Article III's standing requirements." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005). Instead, "plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements." *Id*. "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Id*.

Further, "when plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

###### i.    Plaintiffs have not demonstrated an injury-in-fact

Injury-in-fact is "the first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, (2016). To prove an injury-in-fact the Plaintiffs must show "a concrete and particularized injury." *Sierra v. City of Hallandale Beach*, 996 F.3d 1110 (11th Cir. 2021), citing to *Lujan*, 504 US at 560 n.1. "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. To be concrete, the injury must be real, and not abstract." *Id*., (citing to *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotes omitted)).

In the Amended Complaint, Plaintiffs' claims of injury are based upon a long, winding, highly speculative narrative concerning actions they might have to take or resources they might have to expend at some point in the future due to the actions of the State in passing SB 202. And in a case such as this one, "[w]hen a plaintiff seeks prospective relief to prevent a future injury, it must establish that the threatened injury is certainly impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020). "[A]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. Nor is a "realistic threat," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499-500 (2009), an "objectively reasonable likelihood" of harm, *Clapper*, 568 U.S. at 410.

Despite this requirement of a concrete and particularized injury, Plaintiffs raise only general expectations about how their members might be impacted by the provisions of SB 202 or how they might have to respond as an organization.   For instance, Plaintiff Georgia Conference of the NAACP ("Georgia NAACP") claims that it will have to do things like "change its messaging," [Doc. 35, ¶ 24] use its resources to "educate voters." [Doc. 35, ¶ 25].  Likewise, League of Women Voters of Georgia, Inc. ("League") projects that certain SB 202 provisions create a "risk of disenfranchisement," which it supposes will cause it to reallocate its resources to educate voters about new requirements or update its training materials. [Doc. 35, ¶ 45].  To make out a claim for future harm, Plaintiff Georgia Coalition for the People's Agenda, Inc. ("GCPA") constructs a string of contingent conditions regarding the subjective opinions of minority voters and the possibility that those subjective attitudes might have a negative impact on voter turnout which, in turn, they argue would make it more difficult for the GCPA to accomplish its mission of encouraging minority voter turnout. [Doc. 35, ¶ 38].

Ignoring, for the moment, that Plaintiffs haven't demonstrated how these hypothetical injuries would be attributable to County Defendants, the recitation of facts in the Amended Complaint doesn't rise to the level of an "objectively reasonable likelihood of harm." *Clapper*, 568 U.S. at 410. Although Plaintiffs are

careful to use affirmative language in their Amended Complaint, asserting that hypothetical future events "will" happen, or that the law will "inevitably" impact its members, the reality is that Plaintiffs have not demonstrated any concrete past injury nor have they made a case for the imminent threat of a particularized injury.

Because Plaintiffs cannot show any actual injury, they each make broad, generalized claims that they will have to divert resources to address the provisions of SB 202. However, when a Plaintiff claims diversion of resources as an injury, it must demonstrate that "a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1341 (11th Cir. 2014). Plaintiffs are responsible for proving they "would in fact be diverting . . . resources away from their core activities." *Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cty. Bd. of Reg. & Elections*, Case No. 1:20-CV-01587, 2020 U.S. Dist. LEXIS 211736, at *4 (N.D. Ga. Oct. 5, 2020) ("GALEO"). Organizations cannot support a claim of standing "based solely on the baseline work they are already doing." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 955 (7th Cir. 2019). Plaintiff organizations "cannot convert ordinary program costs into an injury-in-fact. The question is what additional or new burdens are created by the law the organization is challenging. It must show that the disruption is real and its response is warranted." *Id*.

8

Plaintiffs make various claims that they will have to divert unspecified resources or undetermined amounts of money on efforts to address problems that may be caused by SB 202 at some point in the future. But invariably those efforts already fall within the core mission of the organization. For instance, the League claims that its mission includes "…educating the public about the election process" and "assisting voters who have questions or need help navigating the voting process." [Doc. 35, ¶ 43]. And yet they then claim SB 202 will cause them to "divert" resources to use towards those already existing missions of "educating voters" and "answering questions from members of the public" [Doc. 35, ¶ 45]. Similarly, Plaintiff GALEO Latino Community Development Fund, Inc. ("GALEO") indicates that its work "includes organizing voter education, civic engagement, voter empowerment…events, and conducting voter registration drives." [Doc. 35, ¶ 48], but then claims it will be harmed by having to devote resources to "assist voters…in being able to navigate the changes" caused by SB 202. [Doc. 35, ¶ 52].  Presumably its efforts to assist voters will entail the same type of educational and voter engagement activities it already claims as part of its core mission.  Such claims that organizations may have to use their resources to participate in their already existing missions cannot be the basis for a showing of injury-in-fact.

### ii.    Plaintiffs have not shown an injury fairly traceable to the County Defendants

To establish standing, in addition to demonstrating an injury-in-fact, Plaintiffs must also show a "causal connection between [their] injury and the challenged action of the defendant—i.e., the injury must be fairly…trace[able] to the defendant's conduct..." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (internal quotes removed).  The primary assertion of Plaintiffs' lawsuit is that "SB 202 is the culmination of a concerted effort to suppress the participation of Black, Latinx, Asian American, members of indigenous populations, and other voters of color by the Republican State Senate, State House, and Governor." [Doc. 35, ¶ 2].  After pinpointing the State Legislature and Governor as the source of the injurious voting law changes, nowhere in the Amended Complaint do Plaintiffs bother to explain how any alleged injuries are traceable to the County Defendants.

Indeed, Plaintiffs devote 5 pages of the Amended Complaint detailing alleged deficiencies with the process of passing SB 202 [Doc. 35, pp. 48-52] and 15 pages describing why the legislation crafted by the General Assembly is deficient and burdensome [Doc. 35, pp. 52-67].  Nowhere do the Plaintiffs allege or demonstrate a causal connection between the harms created by legislation they seek to overturn and the conduct of the County Defendants.   Not until the Prayer for Relief at the very end of the Amended Complaint do the Plaintiffs even indirectly address the role

10

of the County Defendants, when they ask the Court to enjoin the Defendants generally from enforcing the provisions of SB 202 or conducting elections using those provisions.

There is little doubt that Plaintiffs felt compelled to include the County Defendants due to the opinion of the 11th Circuit in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020).  In that case, the Court ruled that the District Court should have dismissed an action brought by several Democratic voters and organizations challenging to the Florida statute setting the order of candidates' names on the ballot.  Among the reasons for its ruling, the Court said that the plaintiffs failed to demonstrate organizational standing to seek relief against the Florida Secretary of State because her office does not enforce the ballot order provision, noting that only the 67 county Election Supervisors are responsible for preparing the ballots. *Id* at 1253.

The result of that ruling has been that some subset of county election officials has been named in  most election suits filed in the 11th Circuit since then, including at least three other suits currently pending before this Court: *The New Georgia Project et al. v. Kemp, et al.*, Case No. 1:21-cv-01229-JPB; *Sixth District of the African Methodist Episcopal Church, et al. v. Raffensperger et al.*, Case No. 1:21-

11

cv-01284-JPB; *Asian Americans Advancing Justice-Atlanta, et al. v. Raffensperger et al.*, Case No. 1:21-cv-01333-JPB.

However, simply naming an arbitrary set of county election officials as defendants does not meet the Plaintiff's burden to demonstrate traceability and redressability.   "It is the plaintiff's burden to plead and prove…causation…" *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011).   *See also*, *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) ("The party invoking federal jurisdiction bears the burden of proving standing"). "Article III standing requires that the plaintiff's injury be 'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant." *Jacobson,* 974 F.3d 1236, at 1256, citing to *Lewis*, 944 F.3d at 1298, 1301.

The Amended Complaint is bereft of any factual allegations tying Plaintiffs' alleged future injuries to the County Defendants.   They do not even attempt to explain why the particular counties named were chosen, much less how those counties are responsible for the passage or enforcement of the provisions of SB 202. Accordingly, because Plaintiffs have failed to clearly articulate in their Amended Complaint how their claimed injuries are traceable to and redressable by the County Defendants, they have not carried their burden of demonstrating standing to sue the counties.

### iii.    Plaintiffs have not demonstrated how relief could be afforded by enjoining the three County Defendants

Plaintiffs have failed to show how an order enjoining three sets of County Defendants from enforcing the provisions of SB 202 will redress their alleged injuries when, applying Plaintiffs' apparent interpretation of *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245-46 (11th Cir. 2020), 156 other Georgia counties would not be subject to the Court's order.

While Plaintiffs named three county boards of registrations as defendants in the Amended Complaint challenging multiple sections of SB 202, none of the Plaintiffs described themselves as being restricted to working with, or advocating for, their members or voters in only the counties served by the 3 County Boards named as Defendants.   To the contrary, the Plaintiff Georgia NAACP asserts that it has branches in counties across the state of Georgia that are engaged in voter registration and education efforts [Doc. 35 ¶ 15].   Plaintiff GCPA states that it has field offices in Athens, Albany, Augusta, Macon, Savannah, and LaGrange, and asserts that its voter outreach efforts extend "throughout other areas of Georgia" covering approximately 88 counties. [Doc. 35 ¶¶ 29, 30].   Plaintiff GALEO describes itself has having "165 members across Georgia" and having sent mailers "to all Latinx Georgia voters" in past elections [Doc. 35 ¶¶ 47, 51], while Plaintiff Common Cause claims to monitor polling places in 22 counties. [Doc. 35, ¶55].

Presumably, the Plaintiffs would be concerned with the alleged impact of SB 202 on the voters they serve outside of Fulton, Gwinnett, and Cobb Counties and would seek to prevent its enforcement beyond the jurisdiction of the three county boards named herein.[1]

Yet Plaintiffs have chosen not to seek statewide relief against all county election officials, apparently hoping that an order against a tiny subset of counties will somehow bind county election officials throughout the state.  In *Jacobson* the Court noted that a declaratory judgment or injunction against the Secretary of State would not have bound the County Supervisors, who were not parties to the action. *Jacobson*, 974 F.3d 1236, at 1256. at 1302.  Similarly, the election officials in 156 other Georgia counties are not parties to this action and, therefore, would not be "obliged…in any binding sense…to honor an incidental legal determination [this] suit produce[s]." *Id*.   "[I]t must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury. Any persuasive effect a judicial order might have upon the [other county election

---

[1] Notably, Plaintiff Lower Muscogee Creek Tribe avers that it is "located in Grady County on the southwest border of Georgia" [Doc. 35, ¶ 59], and yet it has not even bothered to name Grady County as a defendant.  Under Plaintiffs' theory that counties must be named for redressability purposes, Grady County would be considered a necessary party. The failure to join the Grady County elections board as a party underscores the arbitrary nature of the Plaintiffs' selective choosing of county defendants.

officials], as absent nonparties…cannot suffice to establish redressability." *Id*. at 1254. And see, *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) ("If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability will always exist."

Plaintiffs' failure to sue the parties that can redress the alleged harm could also lead to "arbitrary and disparate treatment to voters in its different counties," *Bush v. Gore*, 531 U.S. 98, 107, 121 S. Ct. 525, 531 (2000), with three counties bound by an order from this Court and the remaining 156 counties following existing law. *See also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1381 (S.D. Fla. 2004) (error not to join other county election officials). In other words, granting Plaintiffs the relief they seek would lead to different rules for elections in different parts of the state, based solely on Plaintiffs' arbitrary choice over which counties to sue in this particular case. This inconsistent action undermines Plaintiffs' own claims of imminent "injury," "redress," or "equal protection" by leaving out the other counties which would prolong any uniform implementation or enforcement of any order issued by this Court.

## III.   CONCLUSION

Plaintiffs have the burden to clearly plead and prove the basic elements of standing in order to bring claims against the County Defendants in this matter. *Bochese*, *supra* 405 F.3d at 976.   Plaintiffs have not met that burden in their Amended Complaint, even construing the facts alleged by them in their favor.

Plaintiffs have not alleged that actions traceable to the County Defendants have or will imminently cause a concrete injury. Further, even though Plaintiffs appear to have named County Defendants for purposes of redressability under an improper interpretation of the 11th Circuit Court of Appeals ruling in *Jacobson v. Fla. Secy. of State*, they have failed to demonstrate how their claimed injuries would be redressed by an order enjoining only three arbitrarily selected counties out of 159 total counties in the state. Such an order would produce two separate sets of rules for elections in Georgia, resulting in non-uniform application of the elections laws within the State, creating an even larger problem than those Plaintiffs seek to address in their Amended Complaint.

Accordingly, and for all the reasons set forth above, County Defendants request that the Court enter an order dismissing all claims against them in Plaintiffs' First Amended Complaint.

Respectfully submitted this 12th day of July, 2021.

PHIL DANIELL, in his official capacity as Chairman of the Cobb County Board of Elections and Registration, FRED AIKEN, PAT GARTLAND, JESSICA M. BROOKS, and DARYL O. WILSON, JR., in their official capacities as Members of the Cobb County Board of Elections and Registration, (collectively the "Cobb County Defendants");

BY:                              **HAYNIE, LITCHFIELD & WHITE, PC**

                                 /s/ *Daniel W. White*
                                 DANIEL W. WHITE
                                 Georgia Bar No. 153033
                                 Haynie, Litchfield & White, PC
                                 222 Washington Avenue
                                 Marietta, GA  30060
                                 (770) 422-8900
                                 dwhite@hlw-law.com
                                 *Attorneys for Cobb County Defendants*

ALEX WAN, in his official capacity as Chairman of the Fulton County Registration and Elections Board, MARK WINGATE, KATHLEEN D. RUTH, VERNETTA K. NURIDDIN, and AARON V. JOHNSON, in their official capacities as Members of the Fulton County Registration and Elections Board;

By:                              **OFFICE OF THE FULTON COUNTY ATTORNEY**

                                 /s/ *Kaye Woodard Burwell*
                                 Georgia Bar Number: 775060
                                 kaye.burwell@fultoncountyga.gov
                                 Cheryl Ringer
                                 Georgia Bar Number: 557420
                                 cheryl.ringer@fultoncountyga.gov
                                 David R. Lowman
                                 Georgia Bar Number: 460298
                                 david.lowman@fultoncountyga.gov
                                 *Attorneys for Fulton County Defendants*

17

ALICE O'LENICK, in her official capacity as Chairman of the Gwinnett County Board of Registration and Elections, WANDY TAYLOR, STEPHEN W. DAY, GEORGE AWUKU, and SANTIAGO MARQUEZ, in their official capacities as Members of the Gwinnett County Board of Registrations and Elections;

By:                       **GWINNETT COUNTY LAW DEPARTMENT**


/s/ *Tuwanda Rush Williams*
Tuwanda Rush Williams
Deputy County Attorney
Georgia Bar No: 619545
tuwanda.williams@gwinnettcounty.com
/s/ *Melanie F. Wilson*
Melanie F. Wilson
Senior Assistant County Attorney
Georgia Bar No. 768870
Melanie.wilson@gwinnettcounty.com
*Attorneys for Gwinnett County Defendants*

## <u>CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 7.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ *Daniel W. White*
DANIEL W. WHITE
Georgia Bar No. 153033
*Attorney for Cobb County Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlw-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021 I electronically filed the foregoing BRIEF IN SUPPORT OF COUNTY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record in this matter.

/s/ *Daniel W. White*
DANIEL W. WHITE
Georgia Bar No. 153033
*Attorney for Cobb County Defendants*

HAYNIE, LITCHFIELD & WHITE, PC
222 Washington Avenue
Marietta, GA  30060
(770) 422-8900
dwhite@hlw-law.com