IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, *et al.,*<br><br>*Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.,*<br><br>*Defendants,*<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.,*<br><br>*Intervenor-Defendants.* | CIVIL ACTION<br><br>FILE NO. 1:21-CV-01259-JPB |

**REPLY BRIEF IN SUPPORT OF
STATE DEFENDANTS' MOTION TO DISMISS**

# INTRODUCTION

Faced with State Defendants' Motion to Dismiss, Plaintiffs ask the Court to ignore their failure to demonstrate standing or to state a plausible claim for relief. The factual allegations in the First Amended Complaint ("FAC") cannot state a claim, even when accepted as true. Plaintiffs challenge reasonable, nondiscriminatory election regulations. As the Eleventh Circuit confirmed, this Court should defer to the State's regulatory interests behind such regulations. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020). Contrary to Plaintiffs' suggestion [Doc. 56, p.1], this case cannot proceed to discovery until this Court ensures it has jurisdiction to hear Plaintiffs' claims, and that Plaintiffs have stated plausible claims for relief. Plaintiffs fail at each turn.

First, Plaintiffs treat Article III standing as a mere academic hurdle to be brushed aside in favor of an (ultimately fruitless) inquiry into the merits, rather than the "irreducible constitutional minimum" that it is. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). For instance, Plaintiffs make the familiar conclusory claim that they are diverting resources because of a law they do not like. More is required to demonstrate organizational standing. Similarly, Plaintiffs fail to show associational standing because, *even assuming*

they identified a purportedly injured member, the claimed injury is too speculative and is not traceable to the State Defendants.

Second, Plaintiffs fail to state a plausible claim for relief. Rather than address this issue head-on, Plaintiffs accuse the State Defendants of improperly arguing the merits at the Motion to Dismiss stage. Plaintiffs believe they can state a plausible claim for relief by packaging several conclusory allegations together, hoping the Court will infer a "cumulative" discriminatory impact. [Doc. 56, p. 1]. But faulty allegations must fail, whether standing alone or grouped together. State Defendants have methodically addressed each of the FAC's individual counts, demonstrating why each lacks sufficient factual support. This Court should dismiss this case and avoid the waste of time and effort that an inquiry into the merits would entail.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    Plaintiffs have not adequately alleged standing.**

    **A.    Plaintiffs ignore the organizational-injury requirements.**

Plaintiffs first claim that the State Defendants' standing argument leans too heavily on out-of-circuit authority and that the State Defendants misread such authority. Plaintiffs are wrong and they rely on far too permissive a view of organizational injury.

The Eleventh Circuit's most recent (and extensive) review of standing in a case challenging election administration came in *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020). It is clear: courts must look to where resources are diverted *from* in addition to what they are diverted *to*. *Id.* at 1250. Why is this? Because this Court must be able to determine that an organizational plaintiff was actually injured by *changing* its activities in response to the challenged law. *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008). If the organization is engaged in activities of "precisely of the same nature as those that [it] engaged in before" the triggering event, then it is not injured—it is doing its job. *Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cty. Bd. of Registrations & Elections*, 499 F. Supp. 3d 1231, 1240 (N.D. Ga. 2020). According to Plaintiffs, however, they will continue doing the things they were doing before, just with a slightly different message.[1] [Doc. 56, p. 10]. But that is insufficient to demonstrate that the organization itself is actually injured—or that, at best, the organization is

---

[1] Some Plaintiffs are also fundraising off this lawsuit, raising the question of whether they actually are benefited by SB 202 and their efforts fighting it. *See* Press Release, *NAACP Georgia State Conference Sues Georgia Secretary of State and State Election Board to Prevent Enforcement of SB 202*, https://naacp.org/articles/naacp-georgia-state-conference-sues-georgia-secretary-state-and-state-election-board (Mar. 29, 2021) (popup includes fundraising request).

3

inflicting harm on itself based on speculative future events. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *see also Long Term Care Pharm. Alliance v. UnitedHealth Group, Inc.,* 498 F. Supp. 2d 187, 192 (D.D.C. 2007) (inquiry is "not whether the organization has diverted resources from one priority to another, but whether its activities have been directly impeded by defendant's activities, thus necessitating the diversion of resources"). Plaintiffs have not sufficiently alleged an injury and their FAC must be dismissed.

### B. Plaintiffs also cannot establish associational standing because the injury alleged is too speculative.

As the FAC confirms, Plaintiffs' injuries (if any) will occur at some point in the future. Even accepting these allegations as true, Plaintiffs' allegations fall short of identifying an injury that is "certainly impending" or "substantially likely" to occur. *Clapper*, 568 U.S. at 401. That is especially true when, at most, Plaintiffs claim they will need to say some things differently as they pursue their mission of educating voters.

Further, while Plaintiffs attempt to dismiss *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018), because it was decided at a later stage of litigation, they ignore the language in it explaining why probabilistic injuries are insufficient for standing. And probabilistic injuries are all Plaintiffs allege as to the Lower Muskogee tribe—that its members are "likely

4

to be affected" by SB 202 and are "more likely" to not have printers at home. [Doc. 35 ¶¶ 59-60]. That is not enough, even at the pleading stage.

### C. Plaintiffs pretend traceability is automatic.

Plaintiffs ignore the fact that most of their claims relate to the "independent actions of some third party" and not the Secretary. *Lujan*, 504 U.S. at 560. While State Defendants play a role in some challenged practices (the design of the absentee-ballot application, for example), Plaintiffs leap past the requirements of *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) (which they do not cite), and allege that, since all of their allegations relate to elections, each challenged practice is necessarily traceable to State Defendants. [Doc. 56, p. 15]. But Plaintiffs do not respond to the fact that the State Election Board has no role in the challenged practices. *Id.* Rather, Plaintiffs continue to rely on decisions that have nothing to do with State Defendants, like the closing of polling places. *See Fair Fight Action v. Raffensperger*, Case No. 1:18-cv-05391-SCJ, Doc. 612, slip op. at 36-42 (Feb. 16, 2021) ("the Court finds that county superintendents—not Defendants—are statutorily responsible and thus accountable for the closing and relocation of polling places and precincts. Thus, the effects stemming from those actions are traceable not to Defendants but to the county superintendents").

5

## II. Plaintiffs fail to state a claim for relief.

### A. Plaintiffs have not plausibly alleged intentional discrimination (Count I).

Turning to the merits, Plaintiffs argue first that "Defendants' failure to address the cumulative impact of all of the challenged provisions of SB 202 is fatal to their motion." [Doc. 56, p. 17]. Plaintiffs ask this Court to allow the case to proceed because—somehow—when you put everything together, they will be able to find racist motivations of the General Assembly and cumulative burdens. State Defendants addressed each challenged provision in their Motion to Dismiss, demonstrating why Plaintiffs failed to state a claim. [Doc. 42 at 11-25]. Considering these facially neutral provisions together does not automatically give them a discriminatory gloss. What they lack individually, they also lack together.

After criticizing State Defendants for citing out-of-circuit precedent on standing, Plaintiffs venture outside this circuit in an effort to find some persuasive authority. Leaning heavily upon *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 222 (4th Cir. 2016), Plaintiffs hope this Court will find discriminatory intent in the provisions they have challenged. But the key facts in that case bear no resemblance to this case.

6

To put it mildly, *McCrory* was a unique case. It involved a successful challenge to a voting rights law that North Carolina passed on the heels of the Supreme Court's decision in *Shelby County v. Holder,* which eliminated the formula for the pre-clearance requirement under the Voting Rights Act. 570 U.S. 529 (2013). In fact, the challenged law was enacted *the very next day. McCrory,* 831 F.3d at 214. It also came in the wake of the Republican Party gaining control of the formerly Democratic-led state legislature. *Id.* As Plaintiffs acknowledge, Black voters generally prefer Democrats to Republicans today. [Doc. 35 ¶ 115]. Thus, in North Carolina, Black voters' preferred political party suddenly no longer controlled the legislature and, after *Shelby County*, voting laws no longer required federal pre-clearance. The Fourth Circuit held that the passage of the election law shortly after these events was suspicious.

But that was not all. In addition to the curious timing, the North Carolina legislature "requested data on the use, by race, of a number of voting practices." *Id*. And *"[u]pon receipt of the race data*, the General Assembly enacted legislation that restricted voting and registration in five different ways, *all of which disproportionately affected African Americans.*" *Id.* (emphasis added). As the Fourth Circuit put it, "the State took away minority voters' opportunity because they were about to exercise it." *Id.* at 215 (quoting

7

*League of United Latin Am. Citizens v. Perry,* 548 U.S. 399, 440 (2006) (internal modifications omitted)). The FAC includes no such allegations.

Second, Plaintiffs also claim that partisanship was used as a cloak for racist intent. [Doc. 56, p. 16-17]. But "partisan motives are not the same as racial motives." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2349 (2021). And the legislature methodically explained its purposes for enacting SB 202 and "a strong state policy in favor of [the challenged practice], for reasons other than race, is evidence that the at-large system does not have a discriminatory intent." *Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1323 (11th Cir. 2021) ("*GBM*") (quoting *United States v. Marengo Cty. Com.*, 731 F.2d 1546, 1571 (11th Cir. 1984)).

Third, Plaintiffs rely heavily on the *Arlington Heights* factors in their effort to survive dismissal, which ultimately do not help their cause either. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). The first *Arlington Heights* factor is the impact of the challenged law. *Id.* at 266. But Plaintiffs have not adequately alleged that SB 202 has an impact or "pattern" that is "*unexplainable* on grounds other than race." *Id.* at 266 (emphasis added). They minimize, for example, that SB 202 was enacted to advance the State's *compelling* interests. *See* SB 202 at 2:69-7:148. While Plaintiffs claim that they can still "draw inferences of an invidious purpose from facially

8

neutral laws," [Doc. 56, p. 20], "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich*, 141 S. Ct. at 2328 (quoting *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006)).

As to the second factor—historical background and statements/actions by key legislators: Nothing in the legislative record indicates a discriminatory intent behind SB 202's enactment, despite Plaintiffs' claims. And Georgia's distant past does not render SB 202 racist. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *GBM*, 992 F.3d at 1328. Indeed, unless a legislator has spoken or acted in a discriminatory manner "at the same time" or "during the same [legislative] session" as the allegedly discriminatory bill—and none did here—no such intent may plausibly be alleged. *GBM*, 992 F.3d at 1323. And Plaintiffs have identified a single statement by a single member, which did not address race, [Doc. 35 ¶ 132], hardly the stuff of which intentional discrimination claims are made.

As to the third *Arlington Heights* factor—the procedure leading up to the law's passage: Plaintiffs have not plausibly alleged the requisite amount of irregularity that would raise concerns about SB 202. Even taking their allegations as true, it is clear that the allegations fail to rise to such a level.

The final factor—availability of less discriminatory alternatives—also does not help Plaintiffs. The State reasonably believed that its compelling

9

interests could only be achieved by enacting SB 202. A State is entitled to deference when deciding whether to tackle a problem incrementally or in "one fell swoop." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015).

### B. Plaintiffs have not plausibly alleged a claim under Section 2 (Count II).

Plaintiffs next gloss over the impact of *Brnovich* by claiming that it did not change the "essential elements for a Section 2 claim." [Doc. 56, p. 21 n.5]. But *Brnovich* brought clarity to the inquiry required when a specific voting practice is challenged—is the voting system as a whole equally open to voters? That is the "touchstone" of a vote-denial claim. *Brnovich*, 141 S. Ct. at 2338.

Even assuming everything in the FAC is true,[2] Plaintiffs have challenged a handful of election practices and ignored the entire context of Georgia's voting system, which provides "numerous avenues" for individuals to vote. *New Ga. Project*, 976 F.3d at 1281. *Brnovich* emphasized that Section 2 claims must be assessed under the "totality of circumstances," noting that voters must "tolerate the usual burdens of voting" and that "[m]ere inconvenience" is not enough to "demonstrate a violation of [Section] 2." 141 S. Ct. at 2338. *Brnovich* also upheld a rule requiring voters to vote in their correct

---

[2] Having amended once, Plaintiffs also request an opportunity to amend again to avoid dismissal. [Doc. 56, p. 21-22 n.5]. This Court should deny that request.

precinct, which was more restrictive than the SB 202 provisions Plaintiffs challenge here. *Id.* at 2350. And *Brnovich* held that fraud is a "strong and entirely legitimate" reason for enacting voting laws. *Id.*

While Plaintiffs continue to claim that a disparate impact of some election practices is sufficient for a Section 2 claim—relying on the same statistical inflation *Brnovich* criticized—*Brnovich* makes clear it is not. Even assuming the allegations of the FAC are true, Plaintiffs have not demonstrated that Georgia's system is unequally open, especially when SB 202 expanded opportunities to vote.

### C. Plaintiffs' fundamental right to vote claim fails (Count III).

Plaintiffs next claim that the Court cannot dismiss an *Anderson/Burdick* claim alleging a burden on the right to vote without an evidentiary record. [Doc. 56, p. 24]. Not only is this patently untrue, but Plaintiffs' only cited authority is *Duke v. Cleland*, 5 F.3d 1399 (11th Cir. 1993), where the Eleventh Circuit explained that evidence of the State's interests was needed in light of the severe burden alleged. *Id.* at 1405-06. But when the burden on the right to vote is not severe, there is no "evidentiary showing or burden of proof to be satisfied by the state government." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009).

Even taken as true, Plaintiffs' allegations do not overcome the significant interests of the State in the administration of its elections. *Brnovich*, 141 S. Ct. at 2348; *Billups*, 554 F.3d at 1354; *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration & Elections*, 446 F. Supp. 3d 1111, 1124 (N.D. Ga. 2020). The challenged laws are "reasonable and nondiscriminatory," *New Ga. Project*, 976 F.3d at 1281, and this Court can appropriately weigh the alleged burden against the State's interests at this point in the litigation before authorizing Plaintiffs to launch a fishing expedition, searching for unconstitutional burdens in each piece of SB 202.

Plaintiffs also completely ignore an extremely relevant question for this Court—how a law that is less burdensome than laws in many other states can be unconstitutional. Plaintiffs claim unconstitutional burdens on the right to vote for a variety of practices, but ignore the reality that many other states have laws far more restrictive for voting than Georgia. *See* [Doc. 42-1, pp. 13-23]. Plaintiffs cannot explain why a federal court should eliminate one state's less restrictive voting law when other states have laws that are far more restrictive.

### D. Plaintiffs' First Amendment claims fail (Counts IV and V).

Plaintiffs' First Amendment claims also cannot survive a motion to dismiss because they involve strictly legal issues. Regarding absentee-ballot

12

applications (Count IV), if states can ban third parties from sending any absentee ballots, *see, e.g., Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 773 (M.D. Tenn. 2020), Plaintiffs fail to explain why Georgia's restrictions cannot be decided as a matter of law. Moreover, Plaintiffs allege that sending absentee-ballot applications is expressive conduct, but then cite only decisions finding that providing *assistance* in filling out the form is expressive conduct. [Doc. 56, pp. 29-30]. This Court can decide as a matter of law whether such a right exists under the First Amendment and can do so without additional evidence—whether sending absentee ballot applications is "conduct that is inherently expressive," *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006); *see also Texas v. Johnson*, 491 U.S. 397, 406 (1989), is a question of law this Court can answer at this stage.

Regarding providing something of value to voters in line to vote, Plaintiffs first claim that this type of activity is expressive speech. [Doc. 56, pp. 29-30]. Plaintiffs admit that they wish to engage in political speech, particularly about voting. [Doc. 56, p. 30]. But that is exactly the problem— engaging in political activity while voters are preparing to vote is exactly what State Defendants were attempting to address in the provisions of SB 202. *See* SB 202 at 6:126-129. As the General Assembly explained, "many groups" approached voters while they were in line and the legislature sought to protect

13

voters from "improper interference, political pressure, or intimidation." *Id*. Plaintiffs' admission that they wish to engage in political speech illustrates exactly the harm SB 202 sought to address.

Plaintiffs also completely ignore the forum analysis required by the Supreme Court for activities at a precinct. *Minn. Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885-86 (2018); *Burson v. Freeman,* 504 U.S. 191, 193-94 (1992). Instead, they move right to strict scrutiny because they claim that precincts are a public forum. They are not and the General Assembly has the authority to regulate speech in that limited forum. *Id*.

### E. Plaintiffs have not alleged a Civil Rights Act claim (Count VI).

Plaintiffs claim that State Defendants do not dispute the immateriality of providing a date of birth, but this is not correct. State Defendants pointed out that there are situations where date of birth is material but that voters have an opportunity to cure. [Doc. 42, p. 15]. Plaintiffs' only response is that the date of birth is unnecessary, but then they compare the requirements to other cases where a different process was used. Before SB 202, the identity of Georgia voters requesting and returning absentee ballots were confirmed by a signature match. Under the new provisions of SB 202, voters must now provide a driver's license number and date of birth as identifying information. Failing

to provide the correct date of birth for a voter does not "disqualify potential voters," *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003), but rather triggers a notice and opportunity to cure that is almost identical to another district court's order when facing claims of improper rejections of absentee ballots in the runup to the 2018 election. *See Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341-42 (N.D. Ga. 2018).

## CONCLUSION

As the Eleventh Circuit said when enjoining a district court's attempt to modify Georgia's election structure in 2020, "Federal judges can have a lot of power—especially when issuing injunctions. And sometimes we may even have a good idea or two. But the Constitution sets out our sphere of decisionmaking, and that sphere does not extend to second-guessing and interfering with a State's reasonable, nondiscriminatory election rules. . . . States—not federal courts—are in charge of setting those rules." *New Ga. Project*, 976 F.3d at 1284. Plaintiffs do not have standing, but even if they do, they have failed to state a claim or demonstrate any basis for this Court to interfere in Georgia's election processes. The Court should dismiss this case.

Respectfully submitted this 9th day of August, 2021.

                                        Christopher M. Carr
                                        Attorney General
                                        Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

Gene C. Schaerr*
Special Assistant Attorney General
H. Christopher Bartolomucci*
Brian J. Field*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

16

*Admitted *pro hac vice*

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Bryan P. Tyson*
Bryan P. Tyson
